# IN THE UNITED STATES DISTRICT COURT
# OF THE EASTERN DISTRICT OF TEXAS
# TEXARKANA DIVISION

| JULIE A. SHARPE | § | |
| --- | --- | --- |
| VS. | § | CIVIL ACTION NO. 5:09cv109 |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION | § | |

## MEMORANDUM ORDER

The above-entitled and numbered civil action was heretofore referred to United States Magistrate Judge Caroline M. Craven pursuant to 28 U.S.C. § 636. The Report of the Magistrate Judge which contains her proposed findings of fact and recommendations for the disposition of such action has been presented for consideration. Plaintiff filed objections to the Report and Recommendation. The Court conducted a de novo review of the Magistrate Judge's findings and conclusions.

## BACKGROUND

On August 6, 2007, Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income, alleging that she became disabled on April 2, 2007. Plaintiff's disability stems from a work injury that resulted in disc bulge and DDD at C4-5 resulting in moderate to severe spinal canal stenosis with bilateral neural foramina stenosis (Tr. 202); disc bulge and DDD at C6-7 (Tr. 202); C5-6 DDD with small central disc protrusion and disc bulging resulting in spinal canal stenosis (Tr. 202); and a C4-7 decompressive cervical laminectomy (Tr. 329).

The claims were denied initially on October 12, 2007, and upon reconsideration on January 7, 2008. After an administrative hearing before an Administrative Law Judge ("ALJ"), an

Unfavorable Decision was entered on March 11, 2009, finding Plaintiff was not disabled. Plaintiff appealed on March 16, 2009, and on July 10, 2009, the Appeals Council denied her appeal. Plaintiff has sought judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## REPORT AND RECOMMENDATION

On January 5, 2011, the Magistrate Judge entered a Report and Recommendation, recommending that Plaintiff's above-entitled and numbered social security cause of action be affirmed. Plaintiff asserts the ALJ erroneously determined that she retained the residual functional capacity to perform a restricted level of light work. Among other things, Plaintiff specifically argues Dr. Akin placed work restrictions on Plaintiff in September 2007, and he did not later release her for work.

The Magistrate Judge outlined the medical evidence of record including the following. Plaintiff reported to the Akin Neurosurgery Clinic on August 2, 2007 (Tr. 278-280). Upon examination, Eric Akin, M.D. reported that Plaintiff's neck had a limited range of motion in all directions, was tender to palpation over the neck and shoulders bilaterally, and he observed moderate to severe paraspinous muscular spasms (Tr. 279). Dr. Akin diagnosed Plaintiff with cervical degenerative disk disease, and in September 2007, he administered an epidural steroid injection to Plaintiff's cervical spine (Tr. 276). In a "To Whom it May Concern" letter, Dr. Akin stated Plaintiff was advised to remain off work until her next visit on September 6, 2007 (Tr. 277).

After the epidural injection proved unsuccessful, Dr. Akin referred Plaintiff to Dr. Anil Nanda in February of 2008. After the intake examination, Dr. Nanda reported that Plaintiff was complaining of neck pain going down the left upper extremity with numbness and tingling and that she had not improved with physical therapy or epidural steroid injections (Tr. 333) Plaintiff was

2

neurologically intact, her cranial nerves were normal, and she enjoyed good motor strength bilaterally in both her upper and lower extremities, with normal reflexes. An x-ray examination of Plaintiff's cervical spine showed moderate disc bulges at C4-5, C5-6 and C6-7 with stenosis (Tr. 333). As a result, Dr. Nanda opined that Plaintiff would be a good candidate for a decompression cervical laminectomy (Tr. 333).

On June 12, 2008, Plaintiff underwent a C4-7 Decompressive Cervical Laminectomy, and Dr. Nanda indicated that Plaintiff would be on medical leave for three months to recuperate from surgery barring any complications (Tr. 329). Two weeks following the surgery, Dr. Nanda reported that Plaintiff was reporting "continued muscle spasms to posterior neck." (Tr. 330). Plaintiff had good motor strength in all extremities, and the incision site was healing well (Tr. 330). In September of 2008, Plaintiff presented to Dr. Nanda for a follow up visit (Tr. 325). The doctor reported that Plaintiff complained of soreness, occasional muscle tightness, and difficulty sleeping, but that she "states neck and arm pain [are] significantly improved post-op." (Tr. 325).

On November 7, 2008, Dr. Nanda reported that Plaintiff confirmed that her prior neck and arm pain was significantly improved (Tr. 336). Again, Plaintiff reported soreness and occasional muscle tightness which was worse in the evenings (Tr. 334). An x-ray examination of Plaintiff's cervical spine showed post operative changes consistent with the cervical laminectomy she underwent, and the doctor explained that he was "pleased with her progress." (Tr. 336). Dr. Nanda indicated he would like Plaintiff to return to the clinic in six months for a follow up (Tr. 336). Dr. Nanda referred Plaintiff to a physical therapy program, where she underwent a series of eight physical therapy sessions in February and March 2009 (Tr. 355, 339-354). Treatment records from February 26, 2009, indicate that the therapy sessions were effective, and Plaintiff rated the pain level

3

in her neck at a three on a ten-point scale (Tr. 345). In March, the physical therapist indicated that the sessions were effective in reestablishing mobility, but that Plaintiff still complained of pain (Tr. 343).

At the February 24, 2009 administrative hearing, orthopedist George Weilepp, M.D. and Betty Feir, Ph.D., impartial medical experts, testified (Tr. 25-27). A vocational expert also testified. Dr. Weilepp testified Plaintiff improved with surgery both by the objective evidence and the evidence on the record and was doing well as recently as June of 2008 (Tr. 23-24). Based on the medical evidence of record, Dr. Weilepp opined that Plaintiff's impairments limited her to working at jobs that required a sedentary or light residual functional capacity. In his decision, the ALJ found that Plaintiff retained the residual functional capacity to perform a limited range of light work activity, lifting/carrying 20 pounds occasionally; lifting/carrying 10 pounds frequently; standing/walking 6 hours in an 8 hour day; sitting 6 hours in an 8 hour day; occasionally overhead reaching with the dominant left upper extremity; occasionally kneeling, crawling, and squatting; frequently bending and lifting; never balancing; never climbing ladders/ropes/scaffolds; and avoiding heights and dangerous equipment (Tr. 13, Finding 5). The ALJ concluded that Plaintiff was unable to perform her past relevant work; however, upon consideration of Plaintiff's residual functional capacity, age, education, work experience, and vocational expert testimony, Plaintiff was capable of performing other jobs existing in significant numbers in the national economy (Tr. 16-17-22, Findings 6 and 10).

The Magistrate Judge found that the record is devoid of any treating physician's opinion that states or implies that Plaintiff would have been precluded or prevented from performing the residual functional capacity assessed by the ALJ. The Magistrate Judge further found that the ALJ's residual

4

functional capacity assessment is consistent with the evidence of record and constitutes an appropriate resolution of any conflicts in the evidence. The Magistrate Judge found Plaintiff did not meet the duration requirement for a closed period of disability. The Magistrate Judge further determined that the ALJ correctly applied the applicable legal standards and that substantial evidence supports Defendant's determination that Plaintiff is not disabled.

## PLAINTIFF'S OBJECTIONS

Plaintiff objects to the Magistrate Judge's Report and Recommendation. Specifically, Plaintiff contends the Magistrate Judge improperly held Plaintiff was not entitled to a closed period of disability. According to Plaintiff, she still continues to have significant limitations, chronic pain, muscle tightness, and trouble sleeping. In the alternative, Plaintiff asserts she is illiterate; she should have been sent for I.Q. testing; and she cannot perform the jobs the ALJ listed.

## DE NOVO REVIEW

On pages 10-15 of the Report and Recommendation, the Magistrate Judge specifically outlined the evidence regarding Plaintiff's cervical pain following her cervical spine surgery. To show that she is disabled, a claimant must demonstrate that she is "[unable] to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Code of Federal Regulation further clarifies the claimant's burden of proof. It states:

> Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement.

20 C.F.R. § 404.1509. "To meet the duration requirement the claimant must demonstrate not simply

that his disability prevented him or would prevent him from performing his past relevant work for a continuous period of 12 months as appellant claims but rather that his disability prevented him or would prevent him from performing *any* substantial gainful activity for 12 continuous months." *Neal v. Bowen*, 829 F.2d 528, 530-31 (5th Cir. 1987).

As noted by the Magistrate Judge, Dr. Weilepp testified at the administrative hearing and specifically addressed the issue of the duration of Plaintiff's alleged disability while convalescing after her surgery (Tr. 24-25). While Dr. Weilepp agreed that Plaintiff may "perhaps" have been disabled following surgery, Dr. Weilepp testified that the convalescence was only a "short period, less than 12 months." (Tr. 25). In addition, as noted by the Magistrate Judge, Dr. Nanda restricted Plaintiff from returning to the work as a custodian that injured her back for two three-month periods, however this does not approach the twelve month duration requirement of the Act. Plaintiff has not demonstrated she was disabled for twelve continuous months. Thus, she does not meet the duration requirement of 20 C.F.R. §§ 404.1509, 416.909.

Regarding Plaintiff's alternative argument that she is illiterate and should have been sent for I.Q. testing, the Magistrate Judge specifically considered Plaintiff's testimony that she has trouble reading; that she cannot read and write; and that she attended special education classes in school. (Report and Recommendation at pg. 14). The Magistrate Judge also considered Plaintiff's testimony that she reads the Bible. The ALJ included in his hypothetical to the vocational expert Plaintiff's twelfth grade special education, as well as her reading and writing limitations:

> Insofar as the mental limitations or nonexertional [limitations], Dr. Feir has opined that she would not be limited there. I wouldn't have a lot of reading and writing. She does indicate in Exhibit 2E that she does read, write and understand English, but she has a twelve special ed. She does read the Bible a little bit. She does have a driver's license and does do limited shopping, but I wouldn't want any work that would

6

require her to do a lot of reading and writing as a condition of employment due to her educational background.

(Tr. 48-49). Within these confines, the vocational expert testified Plaintiff could not perform her past relevant work but that she qualified for some limited jobs at the sedentary unskilled level, jobs such as a microfilm mounter, general office worker, and order clerks (Tr. 50-51). The vocational expert also testified Plaintiff could work at the light unskilled level as a parking lot attendant, gate attendant, and laundry worker (Tr. 52-53). After considering all of the evidence and testimony, the ALJ found that Plaintiff could perform light work with certain restrictions.

Even without formal I.Q. testing, the ALJ considered Plaintiff's educational background and reading and writing limitations in determining Plaintiff's residual functional capacity. As fully discussed by the ALJ and the Magistrate Judge, the objective medical evidence of record supports the ALJ's residual functional capacity for a restricted range of light work.

After reviewing the transcript, the briefs of the parties, and the Report and Recommendation, the Court finds Plaintiff's objections are without merit. The Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct. Therefore, the Court hereby adopts the Report of the United States Magistrate Judge as the findings and conclusions of this Court. Accordingly, it is hereby

**ORDERED** that the above-entitled Social Security action is **AFFIRMED**.

**SIGNED this 1st day of February, 2011.**

_____
DAVID FOLSOM
UNITED STATES DISTRICT JUDGE